1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DARRYL DIAZ,** | **Case No. 1:15-cv-00898 LJO MJS (HC)** |
| Petitioner, | **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **DAVID DAVEY, Warden,** | |
| Respondent. | |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, David Davey, warden of California State Prison, Corcoran, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Rebecca Whitfield of the office of the California Attorney General. The parties declined magistrate judge jurisdiction. (ECF No. 6, 17.)

I.   **Procedural Background**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on October 12, 2011, for three counts of each of sexual intercourse with a child and lewd act upon a child. (Lodged Doc. 3, Clerk's Tr. at 423-

1

1  26.) On February 17, 2012, Petitioner was sentenced to an indeterminate prison term of

2  fifty (50) years to life plus an additional determinate term of seven years. (Id.)

3  Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

4  District. (Lodged Doc. 8.) On December 23, 2013, the appellate court affirmed the

5  conviction. (Answer, Ex. A) Petitioner sought review by the California Supreme Court on

6  January 28, 2014. (Lodged Doc. 11.) The petition for review was denied on March 12,

7  2014. (Lodged Doc. 12.)

8  Petitioner proceeded to file collateral appeals in the form of petitions for writ of

9  habeas corpus in the state courts. He filed a petition with the Fresno County Superior

10  Court on September 10, 2014. (Lodged Doc. 13.) It was dismissed on September 26,

11  2014 without prejudice to refiling as Petitioner failed to attach a proper proof of service.

12  (Lodged Doc. 14.) Petitioner then filed a petition for writ of habeas corpus with the

13  California Supreme Court on June 1, 2015. The petition was summarily denied on

14  August 19, 2015. (Lodged Docs. 15-16.)

15  Petitioner filed his federal habeas petition on June 15, 2015. (Pet., ECF No. 1.)

16  Petitioner raised the following five claims for relief: (1) that counsel was ineffective by not

17  questioning the victim whether she was home at the time of the incident; (2) that counsel

18  was ineffective for failing to request transcripts of the opening and closing statements;

19  (3) that the trial court erred by failing to give an unanimity instruction; (4) that the trial

20  court erred in failing to exclude certain images that were overly prejudicial; and (5) that

21  his due process rights were violated by the use of a jury instruction regarding the

22  admission of prior crimes evidence. (Pet. at 5-17.)

23  Respondent filed an answer to the petition on January 27, 2016. (Answer, ECF

24  Nos. 18-19.) Petitioner filed a traverse to the answer on April 15, 2016. (Traverse, ECF

25  No. 24.)

26

27

28

2

**II.    Statement of Facts[1]**

STATEMENT OF FACTS

I. Prosecution Evidence

On or around October 12, 2008, E.,[fn1] then nine years of age,[fn2] attended a celebrity golf tournament with defendant, her legal father. The following night, while she was sleeping in his bedroom, she awoke to him "breathing behind [her]" and "touching [her] butt with his no-no."[fn3] Roughly one week before January 17, 2009, E. was watching cartoons at defendant's apartment when defendant used a cable to connect his desktop computer to the television. He showed her "nasty videos" and pictures from his computer "up on the TV" of adults, teenagers, and preadolescents "kissing," "touching their private parts," and "doing the bad thing."[fn4] Defendant had E. sit on his lap, placed his hand on her crotch, had her remove her panties, and touched her vagina. When she went to the bathroom, he pulled down his pants. Defendant went to E., who had returned and sat on the couch, and touched her with his penis. He laid her on her back, partially inserted his penis into her vagina for at least five seconds, and withdrew when she expressed pain. Defendant then repositioned E. on her stomach, partially inserted his penis into her anus, and withdrew when she expressed pain. At some point, he touched her breasts.

> **FN1**: In this opinion, certain persons are identified by an abbreviated name in accordance with our Supreme Court's policy regarding protective nondisclosure. Also, individuals who share a last name are identified primarily by their first name to avoid confusion. In both instances, no disrespect is intended.
>
> **FN2**: At the time of trial, E. was 12 years of age.
>
> **FN3**: E. identified the male "no-no" as the penis and female "no-no" as the vagina.
>
> **FN4**: E. testified that she watched such videos on at least five occasions.

E. described other incidents that transpired at defendant's apartment "[e]very other week or so" between October 12, 2008, and January 15, 2009. When she watched the television show American Idol,[fn5] defendant rubbed her crotch, watched pornography and masturbated during commercial breaks, and deposited his semen onto her toes and hand. When she did not watch American Idol, he watched pornography and touched her in the living room and bedroom. The "bad touching" did not occur on Wednesdays. E. saw defendant ejaculate on previous occasions and specified that he inserted his penis into her anus "less than five times, but at least two times[.]" She was warned by

---

[1] The Fifth District Court of Appeal's summary of the facts in its December 23, 2013 opinion is presumed correct.  28 U.S.C. § 2254(e)(1).

defendant "[not to] tell anybody about what's happening, because if [she] do[es], he'll get in trouble and [she]'ll get in trouble."

> **FN5**: The prosecutor and defense counsel stipulated that American Idol aired on KMPH Fox 26 the nights of Tuesday, January 13, 2009, and Wednesday, January 14, 2009.

During a sleepover at the home of A.E., E.'s mother and defendant's ex-wife, on Saturday, January 17, 2009, E. revealed to Emily C., her friend, that defendant touched her, masturbated, deposited "white stuff" between her toes, and "tried to stick his private part inside of hers but it hurt too much so he quit." Thereafter, at Emily's insistence, E. told A.E. that defendant "would take the white stuff out of his man part and put it between her toes," "made her watch weird Web sites," and "tried to put his man part in her no-no but she was too loud so he stopped." A.E. had E.E., then her husband, call the police.

Officer Jay Froman, Jr., was dispatched to A.E.'s home on January 17, 2009. He interviewed E., who detailed that defendant "tried to put his penis in her vagina," "play[ed] with his no-no part," had her "rub[] [his penis] up and down," ejaculated "onto her face" or "into his hand and then rub[bed] it on her feet," and used his middle and index fingers to "spread apart ... and ... rub her private parts ... 'like someone who was trying to get chocolate sauce off their fingers[.]'" The incidents occurred "[o]ver the last year." E. also told Froman that defendant let her stay up past her bedtime to watch American Idol only if she looked at Web sites containing videos and images of "boys' no-no parts going into the girl's private parts" and he "g[o]t to cum in [her] mouth."[fn6]

> **FN6**: According to Froman, E. denied that defendant actually ejaculated into her mouth because "it made her sick when he ejaculated onto her face and that is why she would not let him do that in her mouth."

On January 18, 2009, the police executed a search warrant at defendant's apartment. Forensic analysis of his computer's internal hard drive uncovered approximately 2,500 images of child pornography and related search terms. The trial court admitted five of these images as circumstantial evidence of propensity and the jury viewed each image for three seconds via slide-show presentation.[fn7]

> **FN7**: The trial court denied defense counsel's motion in limine to exclude all pornographic images from evidence. Defense counsel made a continuing objection.

II. Defense Evidence

On January 18, 2009, E. underwent a forensic medical examination for sexual abuse. She did not sustain genital abrasions, bruising, redness, tearing, swelling, or bleeding or exhibit signs of previous trauma or healed injuries. Judy Malmgren, a registered nurse and certified sexual assault nurse examiner, reviewed the examination records and opined that the lack of physical findings was "consistent with no acts of sexual penetration having occurred[.]" She also attested that "it is not unusual for there to be no findings with a child sexual assault allegation" and an absence of findings may result when vaginal or anal penetration is slight. Laboratory

4

analysis of two pairs of panties belonging to E., taken from defendant's apartment, did not detect semen.

E. was interviewed by Maria Gutierrez at the Multi-Disciplinary Interview Center (MDIC) on January 22, 2009. She told Gutierrez that defendant touched her crotch and chest for the first time in 2007 when she was watching the television show Extreme Makeover: Home Edition. The next day, he "French kiss[ed]" her more than once.[fn8] During the last three incidents, which occurred on the Monday, Tuesday, and Thursday before E. went to A.E.'s home, defendant touched E.'s breasts, watched pornography, masturbated, ejaculated, and deposited semen on her face and toes. In addition, on Monday, he pulled down her underwear and licked her vagina. E. recalled that she watched American Idol on Monday and Tuesday. She denied that defendant touched her in any other manner or made her touch his body. E. did not tell Gutierrez that he inserted his penis into her vagina or anus.

> **FN8**: E. defined a French kiss as "[when] he would use your tongue while kiss[ing] you" and "one person kisses another person with their mouth[s] open."

At the preliminary hearing held on June 10, 2009, E. testified that defendant kissed her on the mouth, touched her breasts and vagina, made her look at pornographic videos and images on his computer, made her touch his penis, inserted his penis into her vagina for approximately two minutes four times, ejaculated, and deposited semen on her stomach and feet sometime in the fall during a Monday broadcast of American Idol. Identical acts also took place the following Tuesday and Thursday.

On cross-examination, E. was shown footage of her MDIC interview and read transcripts of this interview and her preliminary hearing testimony. She often testified that she could neither remember her previous statements nor understand defense counsel's questions.

Dr. Susan Napolitano, a psychologist with expertise in forensic interviews of children for sexual abuse, reviewed the videotape and transcript of E.'s MDIC interview. She opined that Gutierrez failed to comply with proper protocol during the information-gathering stage. In particular, Gutierrez seldom asked open-ended questions, often asked leading questions, raised "a barrage of, 'Anything else?' questions" after many of E.'s responses, and displayed confirmatory bias. Napolitano concluded that the interview "strayed so significantly" from protocol as to heighten the risk of creating false memories and obtaining inaccurate information.

III. Jury Instructions

The trial court, upon the request of both the prosecutor and defense counsel, gave the following modified CALCRIM No. 1191 (Evidence of Uncharged Sex Offense):

> "The People presented evidence that the defendant committed the crime of possessing matter depicting minors engaging in or simulating sexual conduct that was not charged in this case.... [¶] You may consider this evidence only if the People have proved by a preponderance of the

evidence that the defendant in fact committed the uncharged offenses. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offense, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the crimes of sexual intercourse or sodomy with a child 10 years of age or younger and/or lewd acts upon a child, as charged. If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the crimes of sexual intercourse or sodomy with a child 10 years of age or younger and/or lewd acts upon a child. The People must still prove each charge beyond a reasonable doubt. [¶] Do not consider this evidence for any other purpose."

Defense counsel did not object to this instruction.

The prosecutor requested an instruction conforming with either CALCRIM No. 3500 (Unanimity)[fn9] or CALCRIM No. 3501 (Unanimity: When Generic Testimony of Offense is Presented).[fn10] The court did not provide a unanimity instruction.

**FN9**: CALCRIM No. 3500 reads:

"The defendant is charged with       <insert description of alleged offense> [in Count       ] [sometime during the period of    to    ]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

**FN10**: CALCRIM No. 3501 reads:

"The defendant is charged with       <insert description[s] of alleged offense[s]> [in Count[s]       ] sometime during the period of    to    . [¶] The People have presented evidence of more than one act to prove that the defendant committed (this/these) offense[s]. You must not find the defendant guilty unless: [¶] 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed [for each offense]; [¶] OR [¶] 2. You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period [and have proved that the defendant committed at least the number of offenses

charged]."

IV. Closing Arguments

The prosecutor remarked in closing:

"Ladies and Gentlemen, if you have listened to this evidence and you feel that [E.] told the truth and that the defendant penetrated her vagina at least one time, Count One is guilty. If you think that he penetrated her butt, her anus, her backside, Count Two, guilty. The People aren't saying it only happened three times. The People are just — at least three times. If you feel that he penetrated her a third time, anal, vaginal, if you believe the evidence shows this happened, that is Count Three. You don't have to agree — you all have to agree on the type of penetration. You don't have to agree on what happened, only that it happened and that it is the same event. So if you all agree on that, Count One, Count Two, and Count Three are guilty.

"As to Counts Four, Five and Six — if you believe that he touched her on her vagina one time, that's Count Four. If you believe he did it at least three times, that is Four, Five and Six, he is guilty. If you believe he ejaculated on her and had her rub — and had her touch his penis, that count[s]. If you believe that he kissed her or touched her in any other inappropriate manner and you all agree on the same facts, he did these things — once again, we're not saying it only happened three times, we're saying it happened at least three times. Because we all know [E.] told you it happened a lot over those three months, almost half the time she ever watched American Idol, and also during other times. All you have to do is agree that the same conduct occurred and the same conduct occurred more than once. [¶] You have plenty to pick from."

Defense counsel contended that E. offered inconsistent accounts of what took place and therefore lacked credibility. He also asserted that A.E. had E. allege molestation against defendant to allow her, her children, and E.E. to move out of state without defendant's interference.

People v. Diaz, 2013 Cal. App. Unpub. LEXIS 9301, 2-13 (Dec. 23, 2013).

## II.  Discussion

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

1   conviction challenged arises out of the Fresno County Superior Court, which is located

2   within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

3   has jurisdiction over the action.

4        **B.**     **Legal Standard of Review**

5        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

6   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

7   filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

8   114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

9   the AEDPA; thus, it is governed by its provisions.

10       Under AEDPA, an application for a writ of habeas corpus by a person in custody

11  under a judgment of a state court may be granted only for violations of the Constitution

12  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

13  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

14  state court proceedings if the state court's adjudication of the claim:

15
16       (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

17
18       (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

19  28 U.S.C. § 2254(d).

20       **1.**     **Contrary to or an Unreasonable Application of Federal Law**

21       A state court decision is "contrary to" federal law if it "applies a rule that

22  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

23  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

24  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

25  "AEDPA does not require state and federal courts to wait for some nearly identical

26  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

27  even a general standard may be applied in an unreasonable manner" Panetti v.

28  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

1  "clearly established Federal law" requirement "does not demand more than a 'principle'

2  or 'general standard.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state

3  decision to be an unreasonable application of clearly established federal law under §

4  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

5  (or principles) to the issue before the state court. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-

6  71 (2003).  A state court decision will involve an "unreasonable application of" federal

7  law only if it is "objectively unreasonable." <u>Id.</u> at 75-76, quoting <u>Williams</u>, 529 U.S. at

8  409-10; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002). In <u>Harrington v. Richter</u>, the

9  Court further stresses that "an *unreasonable* application of federal law is different from

10  an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing <u>Williams</u>, 529

11  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

12  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

13  correctness of the state court's decision." <u>Id.</u> at 786 (citing <u>Yarborough v. Alvarado</u>, 541

14  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

15  have in reading outcomes in case-by-case determinations." <u>Id.</u>; <u>Renico v. Lett</u>, 130 S.

16  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

17  Federal law for a state court to decline to apply a specific legal rule that has not been

18  squarely established by this Court." <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419

19  (2009), quoted by <u>Richter</u>, 131 S. Ct. at 786.

20  ## 2.    Review of State Decisions

21       "Where there has been one reasoned state judgment rejecting a federal claim,

22  later unexplained orders upholding that judgment or rejecting the claim rest on the same

23  grounds." <u>See Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  This is referred to as the

24  "look through" presumption. <u>Id.</u> at 804; <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1198

25  (9th Cir. 2006). Determining whether a state court's decision resulted from an

26  unreasonable legal or factual conclusion, "does not require that there be an opinion from

27  the state court explaining the state court's reasoning." <u>Richter</u>, 131 S. Ct. at 784-85.

28  "Where a state court's decision is unaccompanied by an explanation, the habeas

1    petitioner's burden still must be met by showing there was no reasonable basis for the

2    state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

3    not require a state court to give reasons before its decision can be deemed to have been

4    'adjudicated on the merits.'").

5         Richter instructs that whether the state court decision is reasoned and explained,

6    or merely a summary denial, the approach to evaluating unreasonableness under §

7    2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

8    or theories supported or, as here, could have supported, the state court's decision; then

9    it must ask whether it is possible fairminded jurists could disagree that those arguments

10   or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

11   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

12   was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

13   authority to issue the writ in cases where there is no possibility fairminded jurists could

14   disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

15   it yet another way:

16        As a condition for obtaining habeas corpus relief from a federal
     court, a state prisoner must show that the state court's ruling on the claim
17   being presented in federal court was so lacking in justification that there
     was an error well understood and comprehended in existing law beyond
18   any possibility for fairminded disagreement.

19   Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

20   are the principal forum for asserting constitutional challenges to state convictions." Id. at

21   787. It follows from this consideration that § 2254(d) "complements the exhaustion

22   requirement and the doctrine of procedural bar to ensure that state proceedings are the

23   central process, not just a preliminary step for later federal habeas proceedings." Id.

24   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

25                    **3.    Prejudicial Impact of Constitutional Error**

26        The prejudicial impact of any constitutional error is assessed by asking whether

27   the error had "a substantial and injurious effect or influence in determining the jury's

28   verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

1   U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the

2   state court recognized the error and reviewed it for harmlessness).  Some constitutional

3   errors, however, do not require that the petitioner demonstrate prejudice.  <u>See</u> <u>Arizona v.</u>

4   <u>Fulminante</u>, 499 U.S. 279, 310 (1991); <u>United States v. Cronic</u>, 466 U.S. 648, 659

5   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

6   assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the

7   <u>Strickland</u> prejudice standard is applied and courts do not engage in a separate analysis

8   applying the <u>Brecht</u> standard.  <u>Avila v. Galaza</u>, 297 F.3d 911, 918, n. 7 (2002).  <u>Musalin</u>

9   <u>v. Lamarque</u>, 555 F.3d at 834.

10  **III.    Review of Petition**

11          **A.    Claim One: Ineffective Assistance of Trial Counsel**

12          Petitioner contends trial counsel was ineffective for failing to impeach the victim's

13  testimony by presenting evidence that she did not live with Petitioner at the time of one

14  or more of the alleged assaults.

15                  **1.    State Court Decision**

16          The last reasoned decision of the state court summarily denied Petitioner's

17  ineffective assistance of counsel claim.[1] Determining whether a state court's decision

18  resulted from an unreasonable legal or factual conclusion, "does not require that there

19  be an opinion from the state court explaining the state court's reasoning." <u>Harrington</u>,

20  131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an

21  explanation, the habeas petitioner's burden still must be met by showing there was no

22  reasonable basis for the state court to deny relief." <u>Id.</u> ("This Court now holds and

23  reconfirms that § 2254(d) does not require a state court to give reasons before its

24  decision can be deemed to have been 'adjudicated on the merits.'").

25

26          [1] The Fresno County Superior Court dismissed the claim without prejudice on procedural grounds.
    Rather than re-file the petition with the Superior Court, Petitioner filed a petition with the California
27  Supreme Court, which denied the petition in a summary decision. (Lodged Docs. 13-16.) Accordingly,
    even with the benefit of the look-through doctrine  (<u>Ylst v. Nunnemaker</u>, 501 U.S. at 804-05), there is no
28  reasoned decision provided by the state courts.

1    <u>Harrington</u> instructs that whether the state court decision is reasoned and

2    explained, or merely a summary denial, the approach to evaluating unreasonableness

3    under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what

4    arguments or theories supported or, as here, could have supported, the state court's

5    decision; then it must ask whether it is possible fairminded jurists could disagree that

6    those arguments or theories are inconsistent with the holding in a prior decision of this

7    Court." <u>Id.</u> at 786.

8                          **2.     Legal Standard**

9        The law governing ineffective assistance of counsel claims is clearly established

10   for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

11   <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas

12   corpus alleging ineffective assistance of counsel, the Court must consider two factors.

13   <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry</u>

14   <u>v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

15   performance was deficient, requiring a showing that counsel made errors so serious that

16   he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

17   <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell

18   below an objective standard of reasonableness, and must identify counsel's alleged acts

19   or omissions that were not the result of reasonable professional judgment considering

20   the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348

21   (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

22   indulges a strong presumption that counsel's conduct falls within the wide range of

23   reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Harrington v.</u>

24   <u>Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

25       Second, the petitioner must demonstrate that "there is a reasonable probability

26   that, but for counsel's unprofessional errors, the result ... would have been different."

27   <u>Strickland</u>, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious

28   as to deprive defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. The

1    Court must evaluate whether the entire trial was fundamentally unfair or unreliable

2    because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

3    States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

4          A court need not determine whether counsel's performance was deficient before

5    examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

6    Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

7    deficiency that does not result in prejudice must necessarily fail. However, there are

8    certain instances which are legally presumed to result in prejudice, e.g., where there has

9    been an actual or constructive denial of the assistance of counsel or where the State has

10   interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

11   and n. 25 (1984).

12         As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard

13   for ineffective assistance of counsel in federal habeas is extremely difficult:

14             The pivotal question is whether the state court's application of the
        Strickland standard was unreasonable. This is different from asking
15      whether defense counsel's performance fell below Strickland's standard.
        Were that the inquiry, the analysis would be no different than if, for
16      example, this Court were adjudicating a Strickland claim on direct review
        of a criminal conviction in a United States district court. Under AEDPA,
17      though, it is a necessary premise that the two questions are different. For
        purposes of § 2254(d)(1), "an unreasonable application of federal law is
18      different from an incorrect application of federal law." Williams, supra, at
        410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
19      deference and latitude that are not in operation when the case involves
        review under the Strickland standard itself.
20
               A state court's determination that a claim lacks merit precludes
21      federal habeas relief so long as "fairminded jurists could disagree" on the
        correctness of the state court's decision. Yarborough v. Alvarado, 541
22      U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
        Court has explained, "[E]valuating whether a rule application was
23      unreasonable requires considering the rule's specificity. The more general
        the rule, the more leeway courts have in reaching outcomes in case-by-
24      case determinations." Ibid. "[I]t is not an unreasonable application of
        clearly established Federal law for a state court to decline to apply a
25      specific legal rule that has not been squarely established by this Court."
        Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
26      2d 251, 261 (2009) (internal quotation marks omitted).

27   Harrington v. Richter, 131 S. Ct. at 785-86.

28         "It bears repeating that even a strong case for relief does not mean the state

1  court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

2  2254(d) stops short of imposing a complete bar on federal court relitigation of claims

3  already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

4  from a federal court, a state prisoner must show that the state court's ruling on the claim

5  being presented in federal court was so lacking in justification that there was an error

6  well understood and comprehended in existing law beyond any possibility for fairminded

7  disagreement." Id. at 786-87.

8        Accordingly, even if Petitioner presents a strong case of ineffective assistance of

9  counsel, this Court may only grant relief if no fairminded jurist could agree on the

10  correctness of the state court decision.

11             **3.**    **Analysis**

12        Petitioner contends that counsel was ineffective by failing to cross-examine the

13  victim regarding whether she lived with Petitioner on the nights of the alleged sexual

14  assaults. Respondent asserts that the California Supreme Court decision denying the

15  claim was reasonable because counsel neither performed deficiently, nor did counsel's

16  performance prejudice Petitioner.

17        During direct testimony, the victim explained that several incidents occurred at

18  night while she and Petitioner were watching the television show American Idol, but

19  there was no mention as to which day or days of the week that the show was on. (Rep.

20  Tr. 216-25.) The victim testified that the sexual abuse happened frequently, but not all

21  the time, and that some instances involved Petitioner showing her explicit videos while

22  others involved sexual assault. (Id. at 217-18.)

23        On cross-examination, the victim recalled that one of the incidences of assault

24  occurred on either a Friday or Saturday. (Rep. Tr. at 240.) When asked about whether

25  the victim remembers telling an investigator that the last incidence of assault occurred on

26  a Thursday, the victim was no longer able to recall. (Id. at 248-49.) The victim was

27  provided her prior answers to questions from investigators where she stated that

28  incidents occurred on Monday, Tuesday and Thursday of a given week, however she did

1   not recall making such statements. (<u>Id.</u> at 251-52.) When asked again during cross-

2   examination whether anything occurred on the Monday or Wednesday of the week in

3   question, the victim could not remember. (<u>Id.</u> at 274, 276.)

4          Later during cross-examination, defense counsel again asked the victim about

5   where she spent the night on the Monday, Tuesday, and Wednesday of the week before

6   she reported Petitioner's conduct to police. (Lodged Doc. 5 at 356-57.) Again, the victim

7   testified that she did not remember where she spent the night on the Monday and

8   Tuesday. However, she remembered that she spent the night at Petitioner's house on

9   the Wednesday because she helped Petitioner with his homework. (Lodged Doc. 5 at

10  357.) Defense counsel asked the victim detailed questions about whether she actually

11  spent the night at her grandmother's house, rather than Petitioner's house on the

12  Monday and Tuesday. (<u>Id.</u> at 358-61.) The victim testified that she did not remember. (<u>Id.</u>

13  at 358-61.)

14  Based on a review of the trial testimony, Petitioner's counsel did ask the victim several

15  questions regarding which nights of the week the acts of abuse took place. Petitioner

16  admits that counsel questioned the victim about whether she was at Petitioner's

17  apartment on nights in which she claimed abuse. However, he asserts that counsel was

18  ineffective with failing to present evidence, in the form of declarations or testimony of

19  other witnesses, to prove that she was not at Petitioner's apartment.

20         Petitioner has failed to present any evidence that other witnesses, especially

21  family members had information, and were willing to testify, that the victim was not at his

22  residence on the nights in which she claimed the abuse occurred. This Court, in

23  reviewing Petitioner's claims and determining if the state court decision was reasonable,

24  may only rely upon the record before the state court. <u>See</u> <u>Cullen v. Pinholster</u>, 131 S. Ct.

25  1388, 1398 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record

26  that was before the state court that adjudicated the claim on the merits."). Petitioner

27  presented no evidence in state court of exculpatory evidence based on statements from

28  the victim's family members that the victim was not present at Petitioner's apartment on

1    the nights in question.

2            Petitioner has not shown that counsel's representation was ineffective. Counsel

3    had thoroughly questioned the victim regarding her recall of the events, and forced the

4    victim to admit that her recall of the events had been diminished by the passage of time

5    between the events and trial. Further, Petitioner has not presented the Court with

6    evidence that impeachment testimony existed, as alleged, that would contradict the

7    victim's story that she was at Petitioner's house on the night in question.

8            Harrington instructs that "[u]nder § 2254(d), a habeas court must determine what

9    arguments or theories supported or, as here, could have supported, the state court's

10   decision." Harrington, 131 S. Ct. at 784-85. In this case, the Court could have concluded

11   that trial counsel acted competently by cross-examining the victim and focusing on a

12   defense based on the inconsistencies of the victim's testimony. At closing, Petitioner's

13   counsel focused strongly on the inconsistencies, and argued that in light of them, the

14   prosecution did not meet its burden of proof. (Rep. Tr. at 871-94.) Had the state court

15   denied the claim based on this reasoning, "fairminded jurists could disagree that those

16   arguments or theories are inconsistent" of Strickland. See Harrington 131 S. Ct. at 786.

17   Here, fairminded jurists could disagree that Petitioner's counsel's strategy, to show that

18   the victim's statements were inconsistent and therefore the prosecution did not prove its

19   case beyond a reasonable doubt, was reasonable. Furthermore, fairminded jurists could

20   disagree that, even had counsel been ineffective, Petitioner was not prejudiced by his

21   actions. The case revolved around the allegations of the victim who was eight or nine

22   years old at the time of the molestation, and was testifying three years later about the

23   incidents. Based on the victim's age and the significant time that had elapsed between

24   the incidents and trial, it is reasonable that jurors may have been less critical regarding

25   inconsistencies in the victim's testimony regarding the events. The victim gave detailed

26   statements regarding the acts of sexual intercourse and molestation, despite no longer

27   remembering details such as the days in question when the events occurred. Further,

28   even if counsel's conduct was unreasonable, Petitioner has not shown that it was

1  reasonably probable that the result would be different.  Petitioner has not shown that

2  counsel's conduct was unreasonable, nor that he was prejudiced by counsel's actions.

3      The arguments or theories that could have supported the state court's decision

4  rejecting Petitioner's claim of ineffective assistance of counsel are not "so lacking in

5  justification that there was an error well understood and comprehended in existing law

6  beyond any possibility for fairminded disagreement." <u>Richter</u>, 131 S. Ct. at 786-87.

7  Petitioner is not entitled to federal habeas relief on this claim.

8      **B.    Claim Two: Ineffective Assistance of Appellate Counsel**

9      Petitioner next contends appellate counsel was ineffective based on statements

10  made in opening and closing statements. However, trial counsel only requested copies

11  of the closing statements be preserved. Transcripts of the opening statements are not

12  available.  (Rep. Tr. at 170-71.)

13      **1.    State Court Decision**

14      Like Petitioner's first claim for ineffective assistance of counsel, the last reasoned

15  decision of the state court summarily denied Petitioner's claim of ineffective assistance

16  of appellate counsel. Where there is no reasoned decision from the state court,

17  <u>Harrington</u> instructs that "a habeas court must determine what arguments or theories

18  supported or, as here, could have supported, the state court's decision; then it must ask

19  whether it is possible fairminded jurists could disagree that those arguments or theories

20  are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786. <u>Harrington</u>,

21  131 S. Ct. at 784-85.

22      **2.    Legal Standard**

23      Petitioner claims ineffective assistance of appellate counsel. The Due Process

24  Clause of the Fourteenth Amendment guarantees a criminal defendant the effective

25  assistance of counsel on his first appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-

26  405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Claims of ineffective assistance of

27  appellate counsel are reviewed according to the standard set out above in claim one

28  under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

1   Smith v. Robbins, 528 U.S. 259, 285 (2000); Moormann v. Ryan, 628 F.3d 1102, 1106

2   (9th Cir. 2010). The petitioner must show that counsel's performance was objectively

3   unreasonable, which in the appellate context requires the petitioner to demonstrate that

4   counsel acted unreasonably in failing to discover and brief a merit-worthy issue. Smith,

5   528 U.S. at 285; Moormann, 628 F.3d at 1106. The petitioner also must show prejudice,

6   which in this context requires the petitioner to demonstrate a reasonable probability that,

7   but for appellate counsel's failure to raise the issue, the petitioner would have prevailed

8   in his appeal. Smith, 528 U.S. at 285-86; Moormann, 628 F.3d at 1106.

9                      **3.    Analysis**

10      Contrary to Petitioner's assertions, transcripts of the closing arguments were

11  preserved in the record. (Rep. Tr. at 838-910.) Records do not exist of the opening

12  statements. However, Petitioner provides no more than a general argument that trial

13  counsel committed acts of ineffective assistance of counsel. The only elaboration by

14  Petitioner regarding the errors made during opening statements is the following: "Most

15  cases of prosecutor misconduct occur on closing arguments, where the DA runs

16  slipshod over defendant's rights." (Pet. at 7.)

17      Petitioner has not pointed to specific errors that occurred during opening

18  statements. Petitioner was present during the statements, and could have argued based

19  on personal knowledge what errors occurred. Having presented the Court with no

20  evidence that errors occurred during opening statements, Petitioner has not met his

21  burden of showing that the state court's denial of the claim of ineffective assistance of

22  appellate counsel was unreasonable.

23      With regard to the closing statements, Petitioner contends that the prosecutor

24  committed misconduct and defense counsel failed to object or take any action against

25  that misconduct. Again, Petitioner provides no specific incidents of error in closing

26  arguments, despite the fact that copies of the closing arguments were preserved. After

27  Respondent pointed out in his answer that the closing arguments were preserved,

28  Petitioner filed a traverse, but again provided no argument about specific incidences of

1    error in the closing arguments. Without presenting any factual support for his

2    contentions, Petitioner's claim lacks merit. Based on the summary nature of his claim of

3    ineffective assistance of appellate counsel of failing to present claims of error during

4    opening and closing statements, it was a reasonable determination for the state court to

5    deny the claim. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); see also Jones v.

6    Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("[c]onclusory allegations which are not

7    supported by a statement of specific facts do not warrant habeas relief"); Blackledge v.

8    Allison, 431 U.S. 63, 75 n.7 (1977) (summary disposition of habeas petition appropriate

9    where allegations are vague or conclusory; "the petition is expected to state facts that

10   point to a real possibility of constitutional error") (citation and internal quotations

11   omitted). Petitioner claim of ineffective assistance of appellate counsel is without merit.

12        **C.    Claim Three – Failure to Instruct on an Unanimous Verdict**

13        Petitioner next contends the trial court erred by failing to instruct the jury regarding

14   he unanimity requirement for criminal verdicts.

15                **1.    State Court Decision**

16        Petitioner presented this claim by way of direct appeal to the California Court of

17   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

18   appellate court and summarily denied in a subsequent petition for review by the

19   California Supreme Court. (Lodged Docs. 8-12, Answer, Ex. A.) Because the California

20   Supreme Court's opinion is summary in nature, this Court "looks through" that decision

21   and presumes it adopted the reasoning of the California Court of Appeal, the last state

22   court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05

23   & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher

24   court agrees with lower court's reasoning where former affirms latter without discussion);

25   see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal

26   courts look to last reasoned state court opinion in determining whether state court's

27   rejection of petitioner's claims was contrary to or an unreasonable application of federal

28   law under 28 U.S.C. § 2254(d)(1)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In denying Petitioner's claim, the California Court of Appeal explained:

I. <u>The trial court's failure to provide a unanimity instruction was harmless beyond a reasonable doubt.</u>

In a criminal case, a jury verdict must be unanimous. (<u>People v. Russo</u> (2001) 25 Cal.4th 1124, 1132.) The unanimity requirement is founded on the constitutional principle that a criminal defendant is entitled to a verdict in which all 12 jurors agree, beyond a reasonable doubt, as to each count charged. (<u>People v. Brown</u> (1996) 42 Cal.App.4th 1493, 1499-1500, citing Cal. Const., art. I, § 16 & <u>People v. Jones</u> (1990) 51 Cal.3d 294, 305, 321 (<u>Jones</u>); <u>see also</u> <u>People v. Hernandez</u> (2013) 217 Cal.App.4th 559, 570 (<u>Hernandez</u>) ["The importance of the unanimity instruction is rooted in the Fourteenth Amendment to the United States Constitution's requirement that all criminal defendants are afforded due process of law."].) "'When the evidence tends to show a larger number of distinct violations of the charged crime than have been charged and the prosecution has not elected a specific criminal act or event upon which it will rely for each allegation, the court must instruct the jury on the need for unanimous agreement on the distinct criminal act or event supporting each charge....'" (<u>People v. Whitham</u> (1995) 38 Cal.App.4th 1282, 1295.) "In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given. [Citation.] But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." (<u>Jones</u>, supra, at pp. 321-322.) Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (See <u>People v. Waidla</u> (2000) 22 Cal.4th 690, 733.)

In the instant case, defendant was charged with three counts of sexual intercourse or sodomy in violation of Penal Code section 288.7, subdivision (a). E.'s testimony indicated a larger number of violations than were charged: penetration of her vagina and anus about a week before January 17, 2009, and penetration of her anus on two to five other occasions between October 12, 2008, and January 15, 2009. Defendant was also charged with three counts of committing a lewd act in violation of Penal Code section 288, subdivision (a). Again, E.'s testimony indicated a larger number of violations than were charged: touching of her buttocks sometime after October 12, 2008; touching of her breasts and vagina and placement of the exposed penis on her body about a week before January 17, 2009; and rubbing of her vagina, ejaculation of semen onto her face, depositing of semen onto her hand and toes, and having her rub the penis "[e]very other week or so" between October 12, 2008, and January 15, 2009. The prosecutor did not elect a specific act for each count and the trial court, in error, failed to provide sua sponte any unanimity instruction.[fn11] (<u>See</u> <u>Hernandez</u>, <u>supra</u>, 217 Cal.App.4th at p. 569.) Hence, the question now before us is whether this error requires reversal of defendant's conviction.

**FN11**: The Attorney General also concedes that the charged

offenses did not fall under the "continuous course of conduct" exception.

We apply the test set forth in <u>Chapman v. California</u> (1967) 386 U.S. 18, 24 (<u>Chapman</u>) to determine whether the trial court's failure to provide a unanimity instruction was harmless beyond a reasonable doubt.[fn12] (<u>See, e.g.</u>, <u>People v. Gary</u> (1987) 189 Cal.App.3d 1212, 1218; <u>People v. Metheney</u> (1984) 154 Cal.App.3d 555, 563-564, fn. 5.) Under <u>Chapman</u>, "[w]here the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (<u>People v. Thompson</u> (1995) 36 Cal.App.4th 843, 853 (<u>Thompson</u>).) For instance, "where the defendant offered the same defense to all criminal acts, and 'the jury's verdict implies that it did not believe the only defense offered,' failure to give a unanimity instruction is harmless error." (<u>Hernandez</u>, <u>supra</u>, 217 Cal.App.4th at p. 577, <u>citing</u> <u>People v. Diedrich</u> (1982) 31 Cal.3d 263, 283 (<u>Diedrich</u>).) Additionally, "[w]here the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless." (<u>Thompson</u>, <u>supra</u>, at p. 853.)

> **FN12**: We recognize a split of authority as to the proper standard for prejudicial error in unanimity instruction cases. We adhere to the majority rule that the <u>Chapman</u> test is correct. (<u>See</u> <u>Hernandez</u>, <u>supra</u>, 217 Cal.App.4th at p. 576; <u>but see</u> <u>People v. Vargas</u> (2001) 91 Cal.App.4th 506, 562 [applying test set forth in <u>People v. Watson</u> (1956) 46 Cal.2d 818, 836].)

We conclude the trial court's failure to provide a unanimity instruction was harmless beyond a reasonable doubt. Here, the record does not provide a rational basis for the jury to distinguish among the various acts of molestation alleged so as to find defendant guilty of some of these acts but not guilty of others. (<u>See</u> <u>People v. Deletto</u> (1983) 147 Cal.App.3d 458, 466, 473.) The prosecution's case, devoid of third-party eyewitnesses and physical evidence of molestation, rested on E.'s testimony describing sexual abuse at the hands of defendant for a three-month period. Aside from the first and last incidents, she blurred together the acts. In his closing argument, the prosecutor did not differentiate among the violations, stating inter alia that the jury had "plenty to pick from." On the other side, defense counsel had E. watch footage of her MDIC interview and read transcripts of this interview and her preliminary hearing testimony. He then elicited testimony tending to show her flawed recollection of the events in question. Napolitano also testified that E.'s MDIC interview may have been compromised by the interviewer's disregard of protocol. In his closing argument, defense counsel presented a single defense to each charge, namely that E. lied at the behest of her mother. (<u>See</u> <u>Thompson</u>, <u>supra</u>, 36 Cal.App.4th at p. 853 [different defenses gave the jury a rational basis to distinguish between various acts].)

Furthermore, the jury's return of a guilty verdict on all counts indicated that it rejected in toto defendant's unitary defense, resolved the

credibility dispute against him, and established beyond a reasonable doubt that defendant committed the acts described by E. (See Hernandez, supra, 217 Cal.App.4th at p. 577; see also Jones, supra, 51 Cal.3d at p. 321, original italics ["[I]f an information charged two counts of lewd conduct during a particular time period, the child victim testified that such conduct took place *three times* during that same period, and the jury believed that testimony in toto, its difficulty in differentiating between the various acts should not preclude a conviction of the two counts charged, so long as there is no possibility of jury disagreement regarding the defendant's commission of any of these acts."].) In other words, even without an appropriate instruction, the unanimity requirement was satisfied. (See Jones, supra, at p. 322, quoting People v. Moore (1989) 211 Cal.App.3d 1400, 1414 ["[In child molestation cases], the jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act [citations]."].)

Defendant argues that People v. Smith (2005) 132 Cal.App.4th 1537 (Smith) supports reversal of his conviction. We disagree. In Smith, the accused was charged with 10 counts of lewd and lascivious conduct with a child under 14 years of age. (Id. at p. 1540.) The trial court instructed the jury that "'[it] must unanimously agree that the prosecution proved beyond a reasonable doubt that the defendant committed all the acts described by the alleged victim,'" but failed to also provide the specific acts unanimity instruction in compliance with Jones, supra, 51 Cal.3d 294. (Smith, supra, at pp. 1540, 1543, italics omitted.) In finding prejudicial error under Chapman, the Third Appellate District examined the conduct of the jury, which ignored the only instruction given and convicted on the first count, failed to reach a verdict on the second count, and acquitted on the remaining counts, and concluded that it could not declare beyond a reasonable doubt that "the jury acted in a manner that suggests that it focused on the same specific act of molestation when it reached its decision on count one." (Smith, supra, at p. 1546.) Here, by contrast, the trial court did not instruct the jurors that a conviction is allowed if they unanimously agree either on the specific acts or that defendant committed all the acts described by E. Nonetheless, their verdict convicting defendant on all counts, in view of the circumstances of this case, would have followed an instruction conforming with CALCRIM No. 3501 had it been given.

People v. Diaz, 2013 Cal. App. Unpub. LEXIS 9301 at 13-21.

## 2. Analysis

Petitioner's claim challenging the jury's verdict for lack of unanimity fails. There is no federal constitutional right to a unanimous jury verdict in a state criminal trial. See Richardson v. United States, 526 U.S. 813, 817 (1999) (federal jury need not unanimously decide which set of facts make up a particular element of a crime); Schad

1   v. Arizona, 501 U.S. 624, 631-32 (1991) (plurality holding that conviction under different

2   theories does not violate due process); see also McKoy v. N. Carolina, 494 U.S. 433,

3   449, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990) (Blackmun, J., concurring) ("[D]ifferent

4   jurors may be persuaded by different pieces of evidence, even when they agree upon

5   the bottom line. Plainly there is no general requirement that the jury reach agreement on

6   the preliminary factual issues which underlie the verdict." (footnotes omitted)). Under

7   California law a trial court may be required to *sua sponte* instruct the jury in a criminal

8   trial that it must unanimously agree on the acts or elements underlying the offense in

9   order to convict. See People v. Diedrich, 643 P.2d 971, 980-81 (Cal. 1982); People v.

10   Crawford, 131 Cal. App. 3d 591, 182 Cal. Rptr. 536, 538 (1982) (unanimity instruction

11   required where defendant was charged with possession of one or more firearms by felon

12   and jury could disagree as to particular firearm). However, federal law is clear that, at

13   least in a non-capital case, there is no federal right to a unanimous jury verdict. Schad,

14   501 U.S. at 634 n.5 ("a state criminal defendant, at least in noncapital cases, has no

15   federal right to a unanimous jury verdict"); Apodaca v. Oregon, 406 U.S. 404, 410-13, 92

16   S. Ct. 1628, 32 L. Ed. 2d 184 (1972) (no constitutional right to unanimous jury verdict in

17   non-capital criminal cases). Accordingly, Petitioner is not entitled to relief on this ground.

18       **D.      Claim Four – Admission of Prejudicial Propensity Evidence**

19       Petitioner next contends the trial court erred by allowing five images of child

20   pornography from his computer to be admitted at trial and that the prejudicial nature of

21   the images violated his due process rights to a fair trial.

22               **1.      State Court Decision**

23       Petitioner presented this claim by way of direct appeal to the California Court of

24   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

25   appellate court and summarily denied in a subsequent petition for review by the

26   California Supreme Court. (Lodged Docs. 8-12, Answer, Ex. A.) Because the California

27   Supreme Court's opinion is summary in nature, this Court "looks through" that decision

28   and presumes it adopted the reasoning of the California Court of Appeal, the last state

court to have issued a reasoned opinion. See <u>Ylst v. Nunnemaker</u>, 501 U.S. at 804-05 & n.3. In denying Petitioner's claim, the California Court of Appeal explained:

> II. <u>Five images of child pornography extracted from defendant's computer and offered by the prosecution as circumstantial evidence of propensity were admissible; their probative value outweighed their prejudicial effect.</u>
>
> Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).)[fn13] However, in a criminal action in which a defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by section 1101, so long as the evidence is not made inadmissible by section 352. (§ 1108, subd. (a).) The California State Legislature enacted section 1108 to "relax the evidentiary restraints" imposed by section 1101, "expand the admissibility of disposition or propensity evidence in sex offense cases," and "assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (<u>People v. Falsetta</u> (1999) 21 Cal.4th 903, 911 (<u>Falsetta</u>).) The Legislature recognized that sex crimes "[b]y their very nature ... are usually committed in seclusion without third party witnesses or substantial corroborating evidence" and "[t]he ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations." (<u>Id.</u> at p. 915.) In view of "'the serious and secretive nature of sex crimes and the often resulting credibility contest at trial,'" evidence of a defendant's willingness to commit a sexual offense, an attribute "'not common to most individuals[,] ... is particularly probative and necessary for determining the credibility of the witness.'" (<u>Id.</u> at pp. 911-912.)
>
> **FN13**: All subsequent statutory citations refer to the Evidence Code unless otherwise indicated.
>
> In evaluating the admissibility of propensity evidence under section 1108, the trial court must decide whether the evidence is excluded by section 352. (<u>People v. Robertson</u> (2012) 208 Cal.App.4th 965, 990 (<u>Robertson</u>); see also <u>Falsetta</u>, <u>supra</u>, 21 Cal.4th at pp. 916-921 [describing § 352 as safeguard supporting the constitutionality of § 1108].) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Factors to weigh include the "nature, relevance, and possible remoteness [of the uncharged sex offense], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (<u>Falsetta</u>, <u>supra</u>, 21 Cal.4th at p. 917.) Evidence should be excluded as unduly prejudicial ""when it is

of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." [Citation.]' [Citation.]" (People v. Scott (2011) 52 Cal.4th 452, 491; see also People v. Gionis (1995) 9 Cal.4th 1196, 1214 ["prejudice" set forth in § 352 does not refer to prejudice or damage to a defense that naturally flows from relevant, highly probative evidence, but applies to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues].)

We review a trial court's ruling admitting propensity evidence in a sex offense case for abuse of discretion and will reverse only if the ruling was arbitrary, whimsical, or capricious as a matter of law. Moreover, we review the correctness of the court's ruling at the time it was made and not by reference to evidence produced at a later date. (Robertson, supra, 208 Cal.App.4th at p. 991.)

We conclude the trial court did not abuse its discretion when it admitted five images of child pornography extracted from defendant's computer. E. testified that defendant sexually abused her numerous times and had shown her images of minors engaging in or simulating sexual conduct. The photographs entered into evidence corroborated her account that defendant showed her similar items and may be reasonably interpreted to establish his deviant sexual proclivity for underage girls. In the absence of third-party eyewitnesses and physical proof of molestation, evidence bearing on the credibility of both the victim and perpetrator becomes highly probative. (See People v. Yovanov (1999) 69 Cal.App.4th 392, 405 [evidence of uncharged sexual offenses uniquely probative in sex crimes prosecutions].) We have reviewed these images and find the content, though objectionable, not to be exceedingly inflammatory since defendant's conduct in the present case was "more likely to have aroused the passions of the jurors against him." (Robertson, supra, 208 Cal.App.4th at p. 993.) The trial court's decision to limit the number of images shown to the jury to five, out of the estimated 2,500, and present each image for three seconds via slide-show format ensured that the jury would not expend an inordinate amount of time "trying the uncharged offense[]" so as to "dwarf[] the trial on the current charge [and] unfairly prejudice the defendant." (People v. Frazier (2001) 89 Cal.App.4th 30, 42.) Furthermore, the court's modified CALCRIM No. 1191 offset the risk that the "jury might punish the defendant for his uncharged crime[] regardless of whether it considered him guilty of the charged offense ...." (People v. Frazier, supra, at p. 42.)

Defendant argues that the propensity to have sexual intercourse or sodomy with a child or commit lewd acts upon a child, the crimes for which he was charged and convicted, cannot be inferred conclusively from the different, uncharged crime of possessing child pornography. However, in enacting section 1108, the Legislature determined that the disposition to commit any sexual offense is not common to most individuals. (Falsetta, supra, 21 Cal.4th at p. 912.) """Many sex offenders are not 'specialists', and commit a variety of offenses which differ in specific character." [Citation.]" (People v. Soto (1998) 64 Cal.App.4th 966, 984.) In Soto we held:

1
2
3
4
5

"Section 1108 does not require '"more exacting requirements of similarity between the charged offense and the defendant's other offenses ...."' [Citation.] Such a requirement was not added to the statute because '["]doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [section 1108] is designed to overcome, ... and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative."'" (Ibid.)

6
7
8
9

Contrary to defendant's position, we find the images of child pornography to be highly probative circumstantial evidence of propensity. (Cf. People v. Holford (2012) 203 Cal.App.4th 155, 181, 185-186 [evidence of the defendant's prior molestation of his 15-year-old daughter tended to show his sexual attraction to underage girls and a predisposition to possess child pornography].)

10

People v. Diaz, 2013 Cal. App. Unpub. LEXIS 9301 at 21-28.

11

## 2.    Analysis

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As Respondent correctly argues, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process. See Estelle v. McGuire, 502 U.S. at 75, n.5; Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001). In Estelle, the Supreme Court expressly refused to determine whether the introduction of prior crimes evidence to show propensity to commit a crime would violate the Due Process Clause. Id. ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); see also Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006) ("Estelle expressly left this issue an 'open question'"). Because the Supreme Court has specifically declined to address whether the introduction of propensity evidence violates due process, Petitioner lacks the clearly established federal law necessary to support his claims. Id.; see also Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying on Estelle and Alberni and concluding that the introduction of propensity evidence under California Evidence Code § 1108 does not provide a basis for federal habeas relief, even where the propensity evidence relates to an uncharged crime); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has not yet made a clear

1  ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due

2  process violation sufficient to warrant issuance of the writ.").

3      Accordingly, the state courts' rejection of Petitioner's claim could not have been

4  "contrary to, or an unreasonable application of, clearly established" United States

5  Supreme Court authority, since no such "clearly established" Supreme Court authority

6  exists. 28 U.S.C. § 2254(d)(1).

7      Nevertheless, there can be habeas relief for the admission of prejudicial evidence

8  if the admission was fundamentally unfair and resulted in a denial of due process.

9  Estelle, 502 U.S. at 72; Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v.

10  Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993); Gordon v. Duran, 895 F.2d 610, 613 (9th

11  Cir.1990). Constitutional due process is violated if there are no permissible inferences

12  that may be drawn from the challenged evidence. Jammal v. Van de Kamp, 926 F.2d

13  918, 919-20 (9th Cir. 1991). "Evidence introduced by the prosecution will often raise

14  more than one inference, some permissible, some not." Id. at 920. "A habeas petitioner

15  bears a heavy burden in showing a due process violation based on an evidentiary

16  decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).

17      Here, the California Court of Appeal appropriately found that the evidence was

18  properly admitted to show Petitioner's propensity towards sexual assault against minors

19  based on the possession of child pornography. Both the Ninth Circuit and the California

20  Supreme Court have found that California Evidence Rule 1108 ("Rule 1108") survives

21  due process challenges because of California Evidence Rule 352 ("Rule 352"), which the

22  Court of Appeal appropriately applied in this case. See People v. Falsetta, 21 Cal. 4th

23  903, 917, 89 Cal. Rptr. 2d 847, 986 P.2d 182 (Cal. 1999) ("[T]he trial court's discretion to

24  exclude propensity evidence under section 352 saves section 1108 from defendant's

25  due process challenge.").

26      The Court of Appeal sufficiently protected Petitioner's due process rights by

27  finding that the Superior Court had not abused its discretion in applying Rule 352 to

28  admit the propensity evidence under Rule 1108. The Court of Appeal found the evidence

1   to have a high probative value, which outweighed the danger of prejudice. <u>People v.</u>

2   <u>Diaz</u>, 2013 Cal. App. Unpub. LEXIS 9301 at 21-28 (applying Cal. Evid. Code § 352). The

3   Court of Appeal found the pornographic images probative because they corroborated the

4   victim's testimony that Petitioner showed her similar images several times and to

5   establish his sexual proclivity to underage girls. <u>Id.</u> Further, the Court did not find the

6   evidence overly prejudicial because the alleged criminal conduct was more likely to have

7   upset the jurors, and that the trial court limited the showing to only five images, shown

8   for three seconds each, of the over 2,500 images found on his computer. <u>Id.</u>

9        This Court must defer to the Court of Appeal's conclusions with regard to

10  California law, <u>Bains v. Cambra</u>, 204 F.3d 964, 972 (9th Cir. 2000) (citing <u>Wainwright v.</u>

11  <u>Goode</u>, 464 U.S. 78, 84 (1983)). The Court finds that this analysis adequately addressed

12  the permissible inferences created by the evidence and the fundamental fairness of its

13  introduction. The California Court of Appeal decision denying this claim was not contrary

14  to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to

15  habeas relief with regard to claim four.

16       **E.**     **Claim Five – Use of Uncharged Offenses to Prove Charged Offenses**

17       Petitioner next contends the trial court erred in using jury instruction CALCRIM

18  No. 1191 which allowed the jury to find that Petitioner was disposed or inclined to

19  commit the charged offenses based on evidence of uncharged offenses.[2] Petitioner

20  claims the instruction violated his Due Process rights by lowering the evidentiary burden

21  necessary to convict him of the charged offenses.

22            **1.**     **State Court Decision**

23       Petitioner presented this claim by way of direct appeal to the California Court of

24  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

25  appellate court and summarily denied in subsequent petition for review by the California

26  Supreme Court. (Lodged Docs. 8-12, Answer, Ex. A.) Because the California Supreme

27  _____

28       [2] The language of CALCRIM No. 1191 is set forth in the Summary of Fact section above. <u>See</u>
    <i>Supra</i>, Sec. II.

1  Court's opinion is summary in nature, this Court "looks through" that decision and

2  presumes it adopted the reasoning of the California Court of Appeal, the last state court

3  to have issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

4      In denying Petitioner's claim, the Fifth District Court of Appeal explained:

5      III.    CALCRIM No. 1191 is constitutional.

6          Finally, defendant contends CALCRIM No. 1191 deprives him of
   due process because the instruction authorizes the jury to base a
7  conviction of the charged offense, in part, on evidence that he committed
   an uncharged offense proved only by a preponderance of the evidence
8  rather than beyond a reasonable doubt.[fn14] We reject this claim in view
   of People v. Reliford (2003) 29 Cal.4th 1007, in which our Supreme Court
9  upheld the constitutionality of the 1999 version of California Jury
   Instructions Criminal (CALJIC) No. 2.50.01, CALCRIM No. 1191's
10 precursor. (See also People v. Cromp (2007) 153 Cal.App.4th 476, 480;
   People v. Schnabel (2007) 150 Cal.App.4th 83, 87 [finding 1999 version of
11 CALJIC No. 2.50.01 and CALCRIM No. 1191 similar in all material
   respects and rejecting constitutional challenges to CALCRIM No. 1191 on
12 the basis of Reliford].) We are required by the doctrine of stare decisis to
   follow Reliford.[fn15] (Auto Equity Sales, Inc. v. Superior Court (1962) 57
13 Cal.2d 450, 455.)

14         FN14: The Attorney General asserts on appeal that
           defendant forfeited the issue because defense counsel did
15         not object to the instruction below. We believe defendant's
           argument is cognizable on appeal, despite his failure to
16         object, because he claims the instruction erroneously states
           the law and, if he were correct, would affect his substantial
17         rights. (See People v. Kelly (2007) 42 Cal.4th 763, 791;
           accord Pen. Code, § 1259.)
18
           FN15: Defendant relies on Gibson v. Ortiz (9th Cir. 2004)
19         387 F.3d 812 (Gibson) for the proposition that CALCRIM No.
           1191 is unconstitutional. Decisions of the lower federal
20         courts are not binding on state courts. (James v. State of
           California (2013) 219 Cal.App.4th 1265, 1278, fn. 7.)
21         Moreover, Gibson is factually inapposite. In that case, the
           issue was whether the 1996 version of CALJIC No. 2.50.01
22         and CALJIC No. 2.50.1, in tandem, deprived an inmate of
           due process. (Gibson, supra, at p. 822.) The 1996 version of
23         CALJIC No. 2.50.01 did not contain the caveat subsequently
           added in the 1999 version, and rephrased in CALCRIM No.
24         1191, that evidence of a defendant's prior sexual offense
           proved by a preponderance of the evidence "is not sufficient
25         by itself to prove beyond a reasonable doubt that [he] [she]
           committed the charged crime[s]" and an inference properly
26         drawn from this evidence "is simply one item for you to
           consider, along with all other evidence, in determining
27         whether the defendant has been proved guilty beyond a
           reasonable doubt of the charged crime." (Gibson, supra, at
28         pp. 818-819.) CALJIC No. 2.50.1, on the other hand,

1

2

3

4

5

6

7

"ascribed a lesser burden of proof for evidence of previous sexual offenses" and "specifically referenced CALJIC No. 2.50.01 ...." (Gibson, supra, at p. 822.) Although the Ninth Circuit ultimately found these two instructions to be unconstitutional because "the[ir] interplay ... allowed the jury to find that [inmate] committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the charged acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence," (italics omitted) it suggested that "[h]ad the jury instructions ended with CALJIC No. 2.50.01, our inquiry would have ended with a denial of [inmate]'s petition [for a writ of habeas corpus]." (Ibid.)

8

9

10

11

12

We also point out that the Ninth Circuit recently held that the Fourth Appellate District "did not act contrary to federal law in applying the analysis from Reliford to uphold the 2002 version of CALJIC No. 2.50.01," which incorporated revisions made in 1999 and 2002 and, "[i]n contrast with the instructions given in Gibson, ... in no way suggests that a jury could reasonably convict a defendant for charged offenses based merely on a preponderance of the evidence." (Schultz v. Tilton (9th. Cir. 2011) 659 F.3d 941, 945.)

13

People v. Diaz, 2013 Cal. App. Unpub. LEXIS 9301 at 28-31.

14

**2.    Analysis**

15    Challenges to state jury instructions are generally questions of state law and are

16    thus not cognizable on habeas review. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). In

17    order to merit federal habeas relief on a claim that the trial court erred by failing to

18    instruct a jury properly, a petitioner must show the trial court committed an error that "so

19    infected the entire trial that the resulting conviction violates due process." Id. at 72

20    (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "The burden of demonstrating

21    that an erroneous instruction was so prejudicial that it will support a collateral attack on

22    the constitutional validity of a state court's judgment is even greater than the showing

23    required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145,

24    154 (1977). In making this determination, the jury instruction "may not be judged in

25    artificial isolation, but must be considered in the context of the instructions as a whole

26    and the trial record." Waddington v. Sarausad, 555 U.S. 179, 191, 129 S. Ct. 823, 172 L.

27    Ed. 2d 532 (2009) (internal quotation marks omitted). Even if Petitioner can demonstrate

28    that the instruction violated his right to due process, habeas corpus relief may only be

1   granted if the error had a "substantial and injurious effect or influence in determining the

2   jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation omitted); see

3   also Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

4        Here, Petitioner failed to demonstrate that the trial court erred in instructing the

5   jury pursuant to CALCRIM No. 1191. The Ninth Circuit agreed with the Reliford court that

6   an earlier version of the instruction does not violate due process as it is not "'reasonably

7   likely a jury would interpret the instructions to authorize conviction of the charged

8   offenses based on a lowered standard of proof.'" Schultz v. Tilton, 659 F.3d 941, 944

9   (9th Cir. 2011) (citing Reliford, 29 Cal. 4th 1007, 1016 (2003)). Similar to the instructions

10  in Reliford, the version of the instruction at issue negates any reasonable likelihood of

11  impermissible burden-lowering. The instruction specifically cautions that, if the jury found

12  by a preponderance of the evidence that Petitioner committed the uncharged offenses,

13  "that conclusion is only one factor to consider along with all the other evidence" and that

14  "it is not sufficient by itself to prove that the defendant is guilty of the crimes charged in

15  this case." The California Court of Appeal's decision to apply Reliford in upholding

16  CALCRIM No. 1191 was not contrary to or an unreasonable application of federal law.

17  See Schultz, 659 F.3d at 945. Petitioner is not entitled to habeas relief on this claim.

18  **IV.   Recommendation**

19       Accordingly, it is hereby recommended that the petition for a writ of habeas

20  corpus be DENIED with prejudice.

21       This Findings and Recommendation is submitted to the assigned District Judge,

22  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

23  being served with the Findings and Recommendation, any party may file written

24  objections with the Court and serve a copy on all parties. Such a document should be

25  captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

26  to the objections shall be served and filed within fourteen (14) days after service of the

27  objections. The parties are advised that failure to file objections within the specified time

28

1   may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d
2   834, 839 (9th Cir. 2014).
3
4   IT IS SO ORDERED.
5
6       Dated:   <u>March 6, 2017</u>          /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28